UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARSHA GAYLES

                     Plaintiff,                  **COMPLAINT**

v.

ROSWELL PARK CANCER INSTITUTE
CORPORATION d/b/a ROSWELL PARK
CANCER INSTITUTE,

                     Defendant.
_____

     Plaintiff, MARSHA GAYLES. ("Ms. Gayles" or "Plaintiff"), by and through her attorneys, THE TARANTINO LAW FIRM, LLP, for her Complaint against Defendant, ROSWELL PARK CANCER INSTITUTE CORP d/b/a ROSWELL PARK CANCER INSTITUTE ("Roswell Park"), alleges as follows:

**JURISDICTION AND VENUE**

     1.    This action is authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S. C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., as amended by the Civil Rights Act of 1991, ("Title VII"); the Americans with Disability Act of 1990 (42 USC § 12201 et seq.) ("ADA"); and the New York Human Rights Law, ("NYHRL"), Executive Law § 290 *et seq.,* for damages arising from discrimination and retaliation based on race, and for being a caregiver for her child that is an individual with a disability, and the discriminatory terms and conditions of employment imposed by Defendant, Roswell Park.

     2.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1343 (4), 2201, 2202, and pursuant to 42 U.S.C. § 1988.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental and pendent subject matter jurisdiction over the claims asserted by Plaintiff that are grounded in State law, because the State law claims are so related to the claims over which this Court has original subject matter jurisdiction and arise from a common nucleus of operative facts, and the State law claims form part of the same case or controversy under Article III of the United States Constitution.

4. The venue of this action is properly place in the Western District of New York pursuant to § 706(f)(3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391. Plaintiff resides in this district. Defendant is doing business in this district, and a substantial part of the events giving rise to Plaintiff's claims of discrimination and retaliation occurred in this district.

## PARTIES

5. Plaintiff is a citizen of the United States of America, and resides in the County of Erie, and State of New York.

6. Plaintiff is an African American female.

7. At all relevant times, Plaintiff was or is an employee of Roswell Park as defined by 42 U.S.C. §1981; Title VII, 42 U.S.C. § 2000(e); the Americans with Disability Act of 1990, 42 U.S.C. § 12111(4); and the New York State Human Rights Law, Executive Law § 290 *et seq*.

8. Defendant, Roswell Park, is a public benefit corporation under N.Y. Pub. Auth. Law Section 3553.1(a), and is located in the County of Erie, and State of New York.

9. At all relevant times, Defendant, Roswell Park, was and still is an employer as defined in 42 U.S.C. § 1981, 42 U.S.C. § 2000 (b), the Americans with Disability Act (42 USC § 12203); and the New York State Human Rights Law, Executive Law § 290 *et seq*.

10. Roswell Park is a public entity corporation as statutorily designated by N.Y. Pub. Auth. Law § 3553.1(a) ("There is hereby created a corporation to be known as the Roswell Park Cancer Institute Corporation which shall be a body corporate and politic constituting a public corporation.") N.Y. Const. art. X, § 5.

11. The phrase "body corporate and politic" refers to a wide variety of entities, and standing alone does not designate a public entity corporation as an alter ego of the state.

12. Officers and employees of Roswell Park are "deemed public officers or public employees, as the case may be, in the [New York State] civil service," as set forth in N.Y. Pub. Auth. Law § 3557.1, and "entitled to all the rights thereto as if such employee was a state employee subject to the pertinent provisions of the civil service law." N.Y. Pub. Auth. Law § 3557.5.

13. Under N.Y. Gen. Constr. Law § 65(b), a "public corporation" is defined as either a "municipal corporation," a "district corporation," or a "public benefit corporation," but the Legislature has not defined Roswell Park as a "municipal corporation," which includes a "county, city, town, village and school district," *see* N.Y. Gen. Constr. Law § 66(2), or a "district corporation" which includes "any territorial division of the state . . . whether or not such territorial division is expressly declared to be a body corporate and politic." § 66(3).

14. Roswell Park is self-funded and, with the exception of the appointment of Roswell Park's directors by the governor and other state officials, is not under significant state control.[1]

15. New York is not liable for payment of any Roswell Par bonds or notes, *see* N.Y. Pub. Auth. Law § 3562, or budget deficits, and no New York statute indicates Roswell Park is structured in any other way than to be self-sustaining. N.Y. Pub. Auth. Law § 3554 (10) – (13).

---

[1] Elected NY officials appoint voting directors of Roswell Park and the governor appoints the chair of the board. N.Y. Pub. Auth. Law § 3553(1)(b), (3)(b).

16. Nor does any provision of state law make New York responsible for debts or other liabilities, such as judgments or budget deficits, incurred by Roswell Park either directly or indirectly.[2]

17. Although Roswell Park is intended to benefit the people of the state of New York, its status as a public entity corporation does not, as a matter of federal law, designate it as an "alter ego" or "arm of the state" of New York for purposes of immunity.

18. The operation and management of a cancer research facility and hospital, such as Roswell Park, is not an exclusive function of state or local government. Nor is it traditionally a function performed by state or local government. Roswell Park shares the field with hundreds of other private health and cancer research institutions that similarly receive funding through federal and state providers, including Medicaid or Medicare.

19. In the same way private hospitals and cancer research companies operate, Roswell Park makes independent decisions about its employees, and admission and treatment of patients. It executes its own contracts, leases, and other agreements, and is served by own separate legal counsel and department. Roswell Park does not perform a unique government function that merits its exemption from the discrimination laws at issue in this action.

20. Although Roswell Park's Directors and Chairperson of the Board of Directors are appointed by New York elected officials, their terms are defined for four to five years and once appointed, state lawmakers have no statutory right to oversight of board actions, Roswell Park's management, or authority over day-to-day activities or planning and operations.

21. For purposes of Ms. Gayles claims asserted herein, Roswell Park is not a state agency and is not an arm of the state with regard to the particular statutes as issue. Because New

---

[2] On an annual basis, Roswell Park must submit an annual reporting of its operations and quarterly reports of its fiscal conditions to certain state officials, including the comptroller. N.Y. Pub. Auth. Law § 3568 (4) - (5).

York is not responsible for judgments against Roswell Park, if punitive damages are awarded in this action, innocent taxpayers would not bear the costs.

22. The legislature can exempt Roswell Park from liability under 42 U.S.C. §1981 at any time, but has not done so.

## STATEMENT OF THE CASE

23. Plaintiff Marsha Gayles began her employment with Roswell Park on October 26, 2017, as an executive assistant in the Department of Urology.

24. While in the Department of Urology, Plaintiff worked Dr. Willie Underwood III as his Executive Assistant from October 2017 through April 20, 2019.

25. At the time of Plaintiff's hire, Dr. Underwood was the only African American urologist in the Department of Urology and the entire organization.

26. At the time of her Plaintiff's hire, Dr. Underwood had a pending lawsuit in the United States District Court for the Western District of New York against Defendant, alleging, *inter alia*, discrimination and hostile work environment based on race in violation of Title VII, U.S.C. §1981 and § 1983 and retaliation.

27. Plaintiff Marsha Gayles experienced hostility from employees of Defendant as a result of her association with Dr. Underwood.

28. Dr. Underwood's employment with Defendant ended in 2019.

29. After Dr. Underwood was no longer employed with Defendant, Ms. Gayles was transferred to the Case Management Department in May 2019. Ms. Gayles was the only African American in that department. All other department employees were Caucasian.

30. In or about March 2020, during the onset of the Covid-19 pandemic, Defendant offered remote access to some employees and made accommodations for employees who were

high risk or who had school aged children who were doing remote on-line learning due to schools shutting down.

31.   Beginning on or about March 16, 2020, and continuing, Ms. Gayles requested to her supervisor Patricia Czamara, a Caucasian female, that she be permitted to work remotely so she could care for her disabled 10-year-old son who was high-risk, due to his disability, and whose school had moved to remote on-line instruction.  Patricia Czamara responded by stating that she "would give it some thought."

32.   Upon information and belief, at the end of March 2020, other Roswell employees with similar duties were authorized to work from home, including but not limited to, at least one other executive secretary (Caucasian) from another department.

33.   In or about the end of March 2020 and/or the beginning of April 2020, Ms. Gayles' supervisor, Patricia Czamara, assigned Ms. Gayles to assist in coordinating with the Roswell Park IT department so that all employees in the Case Management department could work remotely. At that time, Roswell IT ordered a laptop for Ms. Gayles to work remotely.

34.   In or about mid-April 2020, when Ms. Gayles advised Ms. Czamara that Roswell IT had obtained a laptop for Ms. Gayles to work remotely, Ms. Czamara stated that Ms. Gayles would not be working remotely due to the "needs of the department."

35.   At that same time, Ms. Czamara also commented that to Ms. Gayles that she was "not comfortable" with Ms. Gayles working and answering calls from home, and denied Ms. Gayles request to work remotely.

36.   Ms. Czamara advised Ms. Gayles that options were to take either a leave of absence or utilize her accruals for time off.

37. Other Caucasian employees in Ms. Gayles department were authorized and worked remotely.

38. Almost all of Ms. Gayles essential duties were administrative and could have been performed remotely.

39. Other Caucasian administrative assistants working for Defendant were permitted to work remotely.

40. Ms. Gayles, the only black employee in her department, was denied the ability to work remotely because of her race.

41. As a result of Ms. Gayles not being permitted to work remotely, beginning on or about May 1, 2020, Ms. Gayles was required to utilize leave time.

42. Beginning on or about May 1, 2020, Ms. Gayles work in the office at Roswell from every Wednesday through Friday.

43. Ms. Gayles was humiliated, embarrassed and subjected to emotional distress by being forced to use all of her paid leave time, and then being forced to use unpaid leave time once her paid time had expired, while her Caucasian co-workers were allowed to work remotely and not use their leave time.

44. Ms. Gayles reported complaints to Human Resources for Defendant multiple times. However, she was informed that it was up to her supervisor's discretion whether to approve or deny remote access.

45. No investigation was conducted by Defendant's Human Resources, nor did anyone from that Department advise Ms. Gayles to bring her complaints to the HR Department of Diversity and Inclusion.

46. On May 29, 2020, Patricia Czamara advised Ms. Gayles that beginning on June 15, 2020, Ms. Gayles would be required to return to the office full time.

47. Mrs. Gayles was exhausted and frustrated as a result of the failure of Defendant to take any action regarding her complaints, while also covering for her department, the Social Work department, and trying to meet the needs of her family, all the while worrying about being exposed to C-19.

48. Significantly, during that time, Ms. Gayles had been a close contact to a co-worker who had Covid-19.

49. Ms. Gayles was also required to work in an area where Covid-19 tests were being sent through the tubing system near her work station.

50. There were occasions when Ms. Gayles came into work and was advised by one of the case managers advised her that one of the clinic staff who were processing Covid-19 tests used Mrs. Gayles desk and phone.

51. Ms. Gayles had to constantly disinfect her work area and phone.

52. Ms. Gayles suffered from extreme emotional distress about exposing her high-risk son to Covid-19.

53. As a result of failure of Defendant to address her complaints of discrimination and the extreme emotional distress to which she was subjected, Ms. Gayles wrote a detailed three-page letter of resignation in which she complained of race discrimination. Ms. Gayles sent the letter to her immediate supervisor, her supervisor's superior, the VP for Human Resources, and the CEO for Roswell, Dr. Candace Johnson. The letter was submitted June 10, 2020, and was effective June 24, 20202.

54. The only response Ms. Gayles received was from Errol Douglas, the VP for Human Resources, who responded to say that he had received her letter of resignation, and to inform her that the Director of Diversity and Inclusion, David Scott would be reaching out to her.

55. David Scott set up a meeting with Ms. Gayles on June 17, 2020. He made no acknowledgement of the complaints that Ms. Gayles had made for months to her supervisors and Human Resources. More importantly, David Scott made no attempt to convince Ms. Gayles that her complaints of discrimination would be investigated, addressed and that she should stay on as an employee of Defendant. Instead, Mr. Scott told Mrs. Gayles that "there are difficult situations everywhere" and "it does not get better than Roswell."

56. Ms. Gayles was constructively discharged from her employment with Defendant on June 24, 2020.

## CONDITIONS TO PRECEDENT TO ACTION

57. Plaintiff has complied with all of the jurisdictional prerequisites to action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000-e as follows:

    A. In Accordance with the time prescribed by 42 U.S.C. § 2000-e, Plaintiff filed a charge of discrimination with the EEOC on or about September 14, 2020, on the basis of her race and being associated with an individual with a disability.

    B. On about the same date as the aforementioned EEOC charge was filed, the EEOC caused a copy of said charge to be filed with the New York State Division of Human Rights.

    C. On or about July 6, 2022, the EEOC sent notification to Plaintiff that she had the right to sue within 90 days of the receipt of the notification. A copy of the EEOC Right to Sue is attached hereto as **Exhibit "A."**

D.     Plaintiff has filed this action within 90 days of the receipt of the notification of the Right to Sue from the EEOC

## AS AND FOR A FIRST CAUSE OF ACTION: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. §2000(e) et seq.

58.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "57" as though fully set forth herein.

59.    Roswell Park discriminated against Plaintiff with respect to the terms and conditions of employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991.

60.    Roswell Park violated Title VII by creating and allowing a culture of race discrimination to permeate Plaintiff's workplace and all aspects of her work environment. This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Roswell Park. The severe and pervasive abusive environment was maintained since the start of Plaintiff's employment through the present and fostered and promoted by Roswell Park's discriminatory acts and conduct as described herein.

61.    The discrimination described herein shows a continuous pattern of unlawful employment practices.

62.    Roswell Park had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the harassment Plaintiff suffered.

63.    Roswell Park knowingly and recklessly discriminated against the Plaintiff on the basis of her race by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

64. Roswell Park knowingly and recklessly permitted its employees, supervisors and leadership team to treat African American employees in a manner different from the treatment received by similarly situated Caucasian employees.

65. Roswell Park failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a racially hostile and unsupportive work environment.

66. Roswell Park's wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

67. Roswell Park's conduct in connection with Plaintiff's employment and its operation as a cancer research facility and hospital do not render it an alter ego of the state, nor is its function a unique government function of state or local government.

68. As a result of Roswell Park's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

69. Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A SECOND CAUSE OF ACTION: RACE DISCRIMINATION IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW NEW YORK EXECUTIVE LAW §290 et seq.

70. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "69" as though fully set forth herein.

71. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

72. During the course of Plaintiff's employment, Roswell Park has treated Plaintiff adversely because of her race and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

73. As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Defendant subjected Plaintiff to adverse employment action because of her race in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

74. Roswell Park has engaged in a pattern and practice of discrimination against Plaintiff with respect to compensation, terms, conditions, and privileges of employment and subjected her to a hostile work environment because of her race in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

75. Roswell Park discriminated against Plaintiff in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq*.

76. Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights.

77. As a result of Defendant's actions, conduct, and omissions, including but not limited to, those described above, Plaintiff incurred damages including but not limited to, lost wages and employee benefits, lost employment opportunities, lost future income, compensation and benefits, mental anguish, and embarrassment.

78. As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

79. Plaintiff demands a jury trial as to all issues so triable.

### AS AND FOR A THIRD CAUSE OF ACTION: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

80. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "79" as though fully set forth herein.

81. By the actions detailed above, Defendant has discriminated against Plaintiff on the basis of her race in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981 by, *inter alia,* denying her the same terms and conditions of employment available to Caucasian employees, including but not limited to, subjecting her disparate working conditions and denying her terms and conditions of employment equal to that of Caucasian employees.

82. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, monetary and economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

83. As detailed above, Defendant was not acting as an alter ego of the state of New York.

84. Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, for which Plaintiff is entitled to an award of punitive damages.

85. As a result of Roswell Park's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

86. Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A FOURTH CAUSE OF ACTION:
## 42 U.S.C. § 1983

87. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "86" as though fully set forth herein.

88. By the actions detailed herein, Defendant, Roswell Park, has discriminated against Plaintiff on the basis of her race in violation of Section 1983 by, *inter alia,* denying her rights privileges or immunities guaranteed under and in violation of the Equal Protection Clause of the United States Constitution, including denying her the same terms and conditions of employment available to employees who are white, subjecting her to disparate working conditions and denying her terms and conditions of employment equal to that of employees who are Caucasian.

89. Defendant Roswell Park acted intentionally, knowingly or recklessly, to deprive Plaintiff of her constitutionally protected rights. Roswell Park acted with the knowledge that its conduct, decisions and pattern of discrimination were reasonably likely to result in a deprivation of Plaintiff's constitutionally protected rights.

90. Roswell Park acted with malice, even motive and reckless indifference to Plaintiff's rights, for which Plaintiff is entitled to an award of punitive damages.

91. As a direct and proximate result of Roswell Park's unlawful and retaliatory conduct in violation of Section 1983, Plaintiff has suffered, and continues to suffer, emotional distress, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits, for which she is entitled to an award of damages in the amount of $2 million.

92. Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR HER FIFTH CAUSE OF ACTION:  DISABILITY DISCRIMINATION IN VIOLATION OF  THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12201)

93. Plaintiff repeats, reiterates and reasserts the allegations set forth in Paragraphs "1" through "92" of this Complaint with the same force and effect as though more fully set forth herein.

94. Plaintiff has an association and/or a relationship with an individual, her minor son, who has a disability within the meaning of the ADA, 42 U.S.C. § 12102.

95. Plaintiff's son's disability substantially limits one or more of his major life activities.

96. Defendant was aware of Plaintiff's son's disability.

97. Defendant is a "covered entity" within the meaning of the ADA.

98. Plaintiff is a qualified individual within the meaning of the ADA, 42 U.S.C. § 12111, who was able to perform the essential functions or her job with or without a reasonable accommodation.

99. Defendant Roswell Park limited, segregated, and/or classified Plaintiff in a way that adversely affected her opportunities or status because of her association and/or relationship with her disabled son in violation of § 102(a) of the ADA, 42 U.S.C. § 12112(a).

100. Defendant Roswell Park utilized standards, criteria, or other methods of administration that had the effect of discrimination and subjected her to a hostile work environment on the basis of her association and/or relationship with her disabled son in violation of § 102(a) of the ADA, 42 U.S.C. § 12112(a).

101. Defendant Roswell Park utilized standards, criteria, or other methods of administration that had the effect of discrimination and subjected her to a hostile work environment

on the basis of her association and/or relationship with her disabled son in violation of § 102(a) of the ADA, 42 U.S.C. § 12112(a).

102. Defendant Roswell Park's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings in violation of § 102(a) of the Civil Rights Act of 1991, 42 U.S.C. § 1981, thereby entitling Plaintiff to an award of compensatory and/or punitive damages.

103. As a result of Defendant Roswell Park's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of no less than Two Million and 00/100 ($2,000,000.00) Dollars, exclusive of interest and costs.

104. Pursuant to § 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates the provisions of § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable costs and attorneys' fees.

105. Plaintiff has no plain, adequate, or complete remedy at law to correct Defendant's employment practices. The injunctive and other relief she seeks is her only means of securing full relief from those practices. Plaintiff is now suffering and will continue to suffer irreparable injury from these unlawful employment practices.

106. Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

### AS AND FOR A SIXTH CAUSE OF ACTION: DISABILITY DISCRIMINATION IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 *et seq.*)

107. Plaintiff repeats, reiterates and reasserts the allegations set forth in Paragraphs "1" through "106" of this Complaint with the same force and effect as though more fully set forth herein.

108. As set forth above, this Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

109. Plaintiff has an association and/or a relationship with an individual, her minor son, who has a disability within the meaning of the NYSHRL, Executive Law § 290 *et seq.*

110. Defendant was aware of Plaintiff's son's disability

111. During the course of Plaintiff's employment, Defendant Roswell Park treated Plaintiff adversely because of her association and/or relationship with her disabled son and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the NYSHRL, Executive Law § 290 *et seq.*

112. As a result of Defendant Roswell Park's actions, conduct, and omissions, including but not limited to those described above, Defendant MUC discriminated against and terminated Plaintiff because of her association and/or relationship with her disabled son, in violation of the NYSHRL, Executive Law § 290 *et seq.*

113. Defendant Roswell Park has engaged in a pattern and practice of discrimination against Plaintiff with respect to compensation, terms, conditions, and privileges of employment and subjected her to a hostile work environment because of her association and/or relationship with her disabled son, in violation of the NYSHRL, Executive Law § 290 *et seq.*

114. Defendant Roswell Park's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights.

115. As a result of Defendant Roswell Park's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages including but not limited to, lost wages and employee benefits, lost employment opportunities, mental anguish, embarrassment and attorneys' fees.

116. As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of no less than Two Million and 00/100 ($2,000,000.00) Dollars, exclusive of interest and costs.

117. Plaintiff has no plain, adequate, or complete remedy at law to correct Defendant's employment practices. The injunctive and other relief she seeks is her only means of securing full relief from those practices. Plaintiff is now suffering and will continue to suffer irreparable injury from these unlawful employment practices.

118. Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiff prays to this Court for the following:

1. For the First, Second, Third, Fourth, Fifth, and Sixth Causes of Action, Plaintiff demands judgment against Defendant ROSWELL PARK CANCER INSTITUTE as follows:

   a. For recovery of $2 million against Defendant as actual damages for loss of revenue, including back pay, front pay, reimbursement for lost pension, loss of future pension, social security, and other past and future benefits, mental anguish, emotional distress, and

embarrassment in an equal amount as liquidated damages, and compensatory damages and for punitive damages together with interest as a result of Defendant's discrimination against Plaintiff;

      b. For the recovery of costs and counsel fees as provided by statute;

      c. For trial by jury on all triable issues; and

      d. For such other and further relief as the Court may deem just, fit and proper.

Dated: October 3, 2022
Buffalo, New York

                                      Respectfully Submitted,

                                      */s/ Kevin P. Wicka*
                                      Kevin P. Wicka, Esq.
                                      Nicholas P. DeMarco, Esq.
                                      The Tarantino Law Firm, LLP
                                      *Attorneys for Plaintiff, MARSHA GAYLES*
                                      City Centre
                                      610 Main Street, Suite 300
                                      Buffalo, New York 14202
                                      (716) 849-6500
                                      kwicka@tarantinolaw.com
                                      ndemarco@tarantinolaw.com